**Jen D. CUBBAGE, Plaintiff-Appellant,**

v.

**Michael MERCHENT, S.W. Meyer, Parker Community Hospital, Defendants-Appellees.**

No. 83–6241.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 3, 1984.

Decided May 11, 1984.

Argued and Submitted July 24, 1984.

Opinion on Rehearing Oct. 3, 1984.

---

Steven B. Stevens, Gantz & Forer, Beverly Hills, Cal., for plaintiff-appellant.

James P. Muehlberger, Snell & Wilmer, Phoenix, Ariz., J.E. Holmes, III, Geoffrey H. Hopper, Thompson & Colegate, Riverside, Cal., for defendants-appellees.

Before KILKENNY, HUG and BOOCHEVER, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant, a California resident, filed a medical malpractice suit in Federal District Court for the Central District of California. Jurisdiction was based on diversity. The two appellee doctors live and practice medicine in Arizona, and appellee hospital is located and licensed in Arizona. The district court dismissed the case for lack of personal jurisdiction as to all appellees. Appellant appeals, arguing that under California's long-arm statute appellees had sufficient contacts with the state to support personal jurisdiction.

## FACTS AND PROCEEDINGS BELOW

Appellee Parker Community Hospital is an Arizona corporation having its principal place of business in Parker, Arizona. The town is located in a sparsely populated desert region near the Arizona/California border. A bridge connects Parker with California. Appellee doctors Merchent and Meyer are Arizona citizens and are licensed to practice medicine there, but not in California.

During October-November of 1981, appellees treated appellant for an ulcer. Appellant was subsequently transferred to a California hospital on November 13, 1981, at the instigation of Dr. Merchent. Appellees were not responsible for any of appellant's treatment there.

The district court, in granting appellees' F.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, included in its findings of fact that (1) a small percentage of the hospital's employees are residents of California—in 1981 sixteen of eighty-seven were California residents; (2) appellees each maintained a listing in the white pages of the 1982 Parker telephone directory, which was distributed in that area of California lying adjacent to Arizona; (3) the hospital also maintained a yellow pages listing in that directory; (4) during a four month period in 1981, approximately 26% of the hospital's patients were California residents who travelled to Arizona for treatment; (5) Dr. Meyer sees approximately 120 patients per week, of whom about 12% are California residents; (6) the doctor appellees applied for and were issued California Medi-Cal numbers; (7) the doctor appellees have treated a small number of patients covered under the Medi-Cal program and have received reimbursement either directly or indirectly from the State of California for those patients.

## ISSUE

Do sufficient contacts exist between appellees and the State of California to support assertion of personal jurisdiction over appellees by a district court sitting in California?

## DISCUSSION

### 1. Standard of Review

Even though the trial court did enter findings of fact, the facts are undisputed and therefore we review the court's holding that the exercise of personal jurisdiction is inconsistent with due process *de novo* as a matter of law. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Clayton v. Republic Airlines, Inc.*, 716 F.2d 729, 730 (CA9 1983) (*de novo* review for order dismissing for lack of subject matter jurisdiction). Where a defendant challenges the sufficiency of personal jurisdiction, the plaintiff must bear the burden of establishing that the court does have jurisdiction. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (CA9 1977).

### 2. In Personam Jurisdiction

The district court's determination of personal jurisdiction is made by examination of the forum state's law. *Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1246 (CA9 1984). California permits "[a] court of [the] state [to] exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ.Proc.Code § 410.10 (West 1973). This statute has been interpreted to confer jurisdiction coextensive with that permitted by due process. *Hunt*, at 1246; *Data Disc*, 557 F.2d at 1286. Federal law is controlling on the issue of due process. *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 789 (CA9 1977).

Where a defendant has "substantial" or "continuous and systematic" contacts with the state, a state court may have general personal jurisdiction, even if the cause of action is unrelated to the defendant's forum activities. *Data Disc*, 557 F.2d at 1287. Appellees do not have such contacts—the doctors are not California residents, are not licensed in California, and did not treat appellant in California; the

hospital is not located, licensed or incorporated in California.

Lacking sufficient contacts to support general jurisdiction, appellees may still be subject to limited personal jurisdiction following "an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action." *Data Disc,* 557 F.2d at 1287. This evaluation must be done on a case-by-case basis, *see Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952), and is derived from *Int'l Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), where the Court held that a state court may subject a nonresident defendant to a judgment *in personam* when that defendant has certain "minimum contacts" with the forum such that maintenance of the suit there does not "offend 'traditional notions of fair play and substantial justice.'" The *Shoe* requirements must be met as to each defendant over whom jurisdiction is to be exercised. *Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980). Appellee doctors' contacts may be considered generally together with those of appellee hospital, as the district court's factual findings apply similarly to each and both appellees assert similar positions on appeal.

■■■ A court judging minimum contacts must focus on the relationship between the defendant, the forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). This court has established a tripartite test for determining whether due process will allow jurisdiction: (A) some action must be taken whereby defendant purposefully avails himself or herself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (B) the claim must arise out of or result from defendant's forum-related activities; and (C) exercise of jurisdiction must be reasonable. *Data Disc,* 557 F.2d at 1287. We conclude that, upon analysis of these factors, due process will not be offended by assertion of personal jurisdiction over appellees.

(A) Actions by which appellees purposefully availed themselves of the privilege of conducting activities in California.

If appellees have so "purposefully availed" themselves, they should reasonably foresee being haled into California courts. *See World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

Appellee doctors applied for and received Medi-Cal numbers from the State of California. A Medi-Cal number permits a health care provider to receive reimbursement from the state for services rendered to eligible California residents. *See County v. Lackner,* 97 Cal.App.3d 576, 159 Cal. Rptr. 1 (1979). Over one-quarter of the hospital's patients are California residents, and appellee doctors (and presumably the hospital as well) have received reimbursement from the Medi-Cal program.

Appellee argues that holding a Medi-Cal number should not be considered a relevant "contact" because the hospital does not make money on Medi-Cal patients. Even assuming *arguendo* the hospital's lack of profit, our focus is on whether appellees *purposefully* took some action by which they *invoked the protection of California law.* Appellee doctors purposefully applied for a Medi-Cal number. Appellees invoked the protection of California law by placing themselves within the statutory safeguards provided health care providers seeking to settle grievances or complaints regarding unpaid Medi-Cal fees. *See* Cal.Welf. & Inst.Code § 14104.5 (West 1980). Under 14104.5, upon exhausting administrative remedies appellees may enter California courts to sue the state for monies owed. *Id.; see, e.g., Royal Conval. Hosp., Inc. v. State Bd. of Control,* 99 Cal.App.3d 788, 160 Cal.Rptr. 458 (1979).

Moreover, appellees each maintained a white pages listing in the Parker phone directory and the hospital maintained a yellow pages listing. Although a telephone listing, without further solicitation, is not

enough in itself to confer jurisdiction, *see Kennedy v. Ziesmann*, 526 F.Supp. 1328, 1331 (E.D.Ky.1981), the hospital took out a yellow page advertisement in the 1982 directory showing the hospital's logo and name in bold print. Below its name the caption reads: "24 HOUR EMERGENCY; PHYSICIAN ALWAYS ON DUTY; ACCREDITED ACUTE HOSPITAL; FULL SERVICES; MEDICAL & SURGICAL," followed by its address and phone number. The directories were distributed in the adjacent California area because of Parker's proximity to the border and the region's sparse population, and appellees were aware of the circulation coverage. Such circulation cannot be characterized as "random, isolated, or fortuitous." *See Keeton v. Hustler Magazine, Inc.,* — U.S. —, —, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).

Appellees rely on *Wright v. Yackley*, 459 F.2d 287 (CA9 1972), this circuit's seminal case on subjecting non-resident medical doctors to personal jurisdiction for treatment rendered in a non-forum state. The court in *Wright* held that jurisdiction in a district court sitting in Idaho did not lie over a South Dakota doctor who, four months after treating appellant in South Dakota, mailed to appellant copies of the original prescription. *Id.* at 291. The court noted:

> In the case of personal services focus must be on the place where the services are rendered, since this is the place of the ... patient's ... need. The need is personal and the services rendered are in response to the dimensions of that personal need. They are directed to no place but to the needy person herself. It is in the very nature of such services that their consequences will be felt wherever the person may choose to go. However, the idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public

interest in having services of this sort generally available.

*Id.* at 289–90.

The *Wright* court was concerned that the amount of contact between defendant and forum state [would be] determined by the chance occurrence of a resident of the forum state seeking treatment by the doctor while in the latter's state. From the very nature of the average doctor's localized practice, there is no systematic or continuing effort on the part of the doctor to provide services which are to be felt in the forum state. [citation omitted].

*Id.* at 290.

Bearing in mind that jurisdictional inquiry must be made on the facts of each case, we decline to apply *Wright's* broad language here. Appellees *do* conduct continuing efforts to provide services in California, and have not shown any efforts on their part to discourage California patients. Appellees' advertising and the circulation of telephone directories into California also distinguish this case from *Wright* and cases following it, *see, e.g., Kennedy*, 526 F.Supp. 1328; *Jackson v. Wileman*, 468 F.Supp. 822 (W.D.Ky.1979); *Glover v. Wagner*, 462 F.Supp. 308 (D.Neb.1978); *Kurtz v. Draur*, 434 F.Supp. 958 (E.D.Pa. 1977); *Gelineau v. New York Univ. Hosp.*, 375 F.Supp. 661 (D.N.J.1974); *Spokane Eye Clinic, Inc. v. Sup.Ct.*, 63 Cal.App.3d 548, 133 Cal.Rptr. 838 (1976). In these cases the patient undertook "unilateral activity" in seeking medical treatment. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). We find no justifiable difference between this case and those cases involving "voluntary, interstate economic activity, ... directed at [another state] in order to benefit from effects sought [there] ...." *Wright*, 459 F.2d at 290.

There is no evidence in the record suggesting that subjecting appellees to the jurisdiction of California courts will produce a "chilling effect" on appellees in treating California patients. Appellees have not made any showing that they

would not treat California patients for fear of being haled before a California court, or that their insurance rates would increase as a result. Unlike the situation in *World-Wide Volkswagen,* appellees in this case were located near the border of the forum state and thus rendition of services to California residents was not an "isolated occurrence." *See World-Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567. Appellees' have therefore "purposefully availed" themselves of the privilege of conducting activities in California.

(B) Appellant's claim must arise out of or result from appellees' forum-related activities:

As stated above, appellees' relevant contacts with California were the obtaining of a Medi-Cal number and the placing of a telephone listing (and for the hospital, a yellow pages advertisement) in a local phone directory distributed in the adjacent California area. Through directory solicitation and participation in a state health care program appellees were able to attract a substantial number of patients from California. Furthermore, appellees' forum activities were enhanced by appellant's California residence because that residence is the focus of appellees' activities out of which the suit arises. *Keeton,* — U.S. at ——, 104 S.Ct. at 1481; *Calder v. Jones,* — U.S. ——, ——, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984); *contra Wright,* 459 F.2d at 290 (residence of recipient in forum state irrelevant and incidental to benefits provided by defendant in his location). Accordingly, we conclude that appellant's claim arose out of or resulted from appellees' forum-related activities.

(C) Exercise of jurisdiction must be reasonable:

This court analyzes several factors in determining the reasonableness of asserting jurisdiction: (1) the extent of purposeful interjection into the forum state; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of defendant's state; (4)

the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Ins. Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1270 (CA9 1981).

(1) *Extent of purposeful interjection:*

Appellees did not treat appellant in California, although they did treat a substantial number of California residents, *see Raffaele v. Compagnie Generale Maritime,* 707 F.2d 395, 398 (CA9 1983), did obtain Medi-Cal numbers, and did invoke the protection of California law. *But see Data Disc,* 557 F.2d at 1288 (allegedly negligent action less an interjection than purposeful one).

(2) *Burden on defendant:*

Appellees are unfamiliar with California law. Their insurance carrier, relevant witnesses and attorneys are located in Arizona. Appellees would suffer some inconvenience in being haled before the courts of California, although California is not a "distant" forum, *see World-Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564, because Parker lies roughly the same distance from Los Angeles as it does from Phoenix, site of the district court for Arizona. Further, it is not beyond doubt that California, in applying its choice of law rules, would apply its own substantive law rather than the law of Arizona. *See Hall v. Univ. of Nevada,* 74 Cal.App.3d 280, 285–86, 141 Cal.Rptr. 439, 441–42 (1977) (where both states have an interest in having their respective laws applied, the court seeks to determine which state's policy would be more impaired if the other state's law were adopted), *aff'd on other grounds,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979).

While choice of law is a separate inquiry from that of personal jurisdiction, *see Keeton,* — U.S. at ——, 104 S.Ct. at 1481, the two state's medical malpractice statutory schemes bear certain similarities to each

other, *Compare* Ariz.Rev.Stat.Ann. § 12–561 (1982) ("medical malpractice action" defined) *with* Cal.Civ.Code § 3333.1 (West Cum.Supp.1984) ("professional negligence" defined); Ariz.Rev.Stat.Ann. § 12–564 (1982) *with* Cal.Civ.Proc.Code § 340.5 (West 1982) (limitations of actions); Ariz.Rev.Stat.Ann. § 12–565 (1982) *with* Cal.Civ.Code § 3333.1(a), (b) (West Cum.Supp.1984) (collateral source evidence rule). They also differ in some respects. *Compare* Ariz.Rev.Stat.Ann. § 12–566 (1982) (specific amount of damages need not be stated) *with* Cal.Civ.Code § 3333.2(b) (West Cum.Supp.1984) ($250,000 limit for noneconomic losses); Ariz.Rev.Stat.Ann. § 12–567 (1982) (medical liability review panels; no bar to proceeding with future litigation) *with* Cal.Civ.Proc.Code § 1281 *et seq.* (West 1982) *and Wheeler v. St. Joseph Hosp.,* 63 Cal.App.3d 345, 354, 133 Cal.Rptr. 775, 781 (1976) (arbitration of medical malpractice claims allowed) *and Weeks v. Crow,* 113 Cal.App.3d 350, 352, 169 Cal.Rptr. 830, 831 (1980) (arbitration agreement waiving right to later jury or court trial). *See also* Ariz.Rev.Stat.Ann. §§ 12–568 (review of attorneys' fees in health care actions), 12–569 (non-admissibility of certain malpractice insurance information); *Air Crash Disaster Near Chicago, Illinois,* 644 F.2d 594, 626 (CA7) (California Supreme Court has not confronted situation under comparative impairment test where states with the most relevant interests also have equal interests), *cert. denied* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981).

### (3) *Conflict with sovereignty of defendant's state:*

A court should normally refrain from exercising jurisdiction when another state has expressed a substantially stronger sovereignty interest and that state's courts will take jurisdiction. *Raffaele,* 707 F.2d at 398. The State of Arizona has not expressed a substantially stronger sovereignty interest in this case. *See Ins. Corp. of Ireland, Ltd. v. Compagnie Des Bauxites De Guinee,* 456 U.S. 694, 702–03 & n. 10, 102 S.Ct. 2099, 2104–05 & n. 10, 72 L.Ed.2d 492 (1982) (restriction on state sovereign

power described in *World-Wide Volkswagen* must be seen as ultimately a function of the individual liberty interest preserved by the Due Process Clause).

### (4) *Forum state's interest:*

California obviously has an interest in protecting its citizens against the tortious conduct of others, including medical malpractice. *See Wright,* 459 F.2d at 290–91. The *Wright* court noted that

> [T]he forum state's natural interest in the protection of its citizens is here countered by an interest in their access to medical services wherever needed.... [A] state's dominant interest on behalf of its citizens *in such a case as this* is not that they should be free from injury by out-of-state doctors, but rather that they should be able to secure adequate medical services to meet their needs wherever they may go....

*Id.* (emphasis supplied).

We again decline to find the *Wright* court's language controlling. California's interest in allowing its citizens to secure adequate medical treatment is apropos to the factual setting in *Wright,* where the South Dakota-based doctor's only connection with Idaho was the mailing of a prescription made out four months earlier. Appellees here have more significant contacts. Given those contacts, California has a manifest interest here in protecting its citizens from tortious injury by health care providers who solicit and derive a substantial number of patients and revenue from the state, exceeding the interest it has in seeing that its citizens secure adequate medical treatment wherever they travel. *Cf. McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Under the circumstances of this case there is no indication that affording such protection would interfere with California's interest in seeing that its citizens secure adequate medical treatment wherever they travel.

### (5) *Most efficient judicial resolution:*

The court sitting in the place the injury occurred is ordinarily the most efficient

forum, where that court is most competent at interpreting the applicable law. *Raffaele*, 707 F.2d at 399. As discussed above, it is not clear whether the court in California would apply its own law or the law of Arizona. *See Hall*, 74 Cal.App.3d at 285, 141 Cal.Rptr. at 441; *Air Crash Disaster*, 644 F.2d at 626.

(6) *Convenient and effective relief for plaintiff:*

Appellant is a California resident, California courts are more accessible to him, and California has an interest in protecting its citizens. *See World-Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564.

(7) *Alternative forum:*

Appellant may bring suit in Arizona.

While mindful of this court's admonition that it may be unreasonable to subject an out-of-state defendant to jurisdiction where the allegedly tortious act is committed outside the forum state, *Data Disc*, 557 F.2d at 1288, we are also cognizant that the reasonableness inquiry is a balancing process, *Ins. Co. of North America*, 649 F.2d at 1273. On balance, we conclude that the exercise of jurisdiction over appellees is reasonable.

3. *Conclusion*

We are not unmindful of the recent decision of the United States Supreme Court in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, — U.S. —, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). That case is not inconsistent with our decision. There the Court held that the corporation's contacts with the State of Texas were insufficient to support an assertion of general jurisdiction, noting that mere purchases, even if occurring at regular intervals, are not enough to warrant general jurisdiction over a non-resident corporation. Nothing in *Helicopteros* showed that the purchases were related to the cause of action. Here the appellees' receipt of revenue from California residents was part and parcel of the appellant's cause of action and an integral part of the entire factual situation. Appellant's prox-

imity to the California border cannot be likened to the vast separation between the Country of Colombia and the State of Texas.

Consequently, we conclude that, on the facts of this case, assertion of *in personam* jurisdiction over appellees by a district court sitting in California does not offend due process. Accordingly, the decision of the district court is hereby reversed and remanded for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

HUG, Circuit Judge, dissenting:

I respectfully dissent. The treatment of which appellant complains was rendered entirely in Arizona. For the reasons stated in *Wright v. Yackley*, 459 F.2d 287 (9th Cir.1972), I would affirm the dismissal by the district court.

There was an insufficient showing, in my view, that the forum-related activities justified the assertion of personal jurisdiction in California. The telephone listings in the local Parker, Arizona telephone directory and the obtaining of a Medi-Cal number for billing purposes do not constitute a sufficient interjection by appellees into the state of California to warrant personal jurisdiction for a claim arising out of the medical treatment in Arizona. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), or *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280 (9th Cir.1977).

OPINION AND ORDER ON PETITION FOR REHEARING

KILKENNY, Circuit Judge:

Due to an oversight on the part of our Clerk's office, counsel for the appellee hospital were not notified of the time and place of oral argument. This oversight was not called to our attention until the hospital filed its petition for a rehearing on our opinion, *Cubbage v. Merchent*, 732 F.2d 1476 (CA9 1984). To remedy this oversight, we arranged for counsel for both the

hospital and Cubbage to present their arguments in a telephone conference.

During the course of the argument, counsel for the hospital cited *Ballard v. Fred E. Rawlins, Inc.*, 101 Ill.App.3d 601, 56 Ill.Dec. 940, 428 N.E.2d 532 (1981); *NTN Bearing Corp. of America v. Charles E. Scott, Inc.*, 557 F.Supp. 1273 (N.D.Ill.1983); *Guerrero v. Copper Queen Hospital*, 112 Ariz. 104, 537 P.2d 1329 (1975), and *Ada Carol Thompson v. Sun City Community Hospital*, 142 Ariz. 1, 688 P.2d 647 (1983) (in banc). In *Ballard* it is clear that the Illinois court did not have before it a factual background such as ours. There seemed to be no showing of a major influx of residents of Missouri into Polaski County, Illinois, nor was there any evidence that the physician in question had advertised in the yellow pages or that the yellow pages had been widely distributed in Missouri. For that matter, the ultimate holding of the court was that "the relative convenience of the location of the *Illinois tribunal* is not sufficient to establish personal jurisdiction over the defendants." 101 Ill.App.3d at 602, 428 N.E.2d at 534 (emphasis supplied). Moreover, the only evidence seeming to link the defendant to Illinois was that he asked the patient for the name of a drug store close to the patient and that such drug store was located in Illinois. 101 Ill. App.3d at 604, 428 N.E.2d at 535. The case of *Lemke v. St. Margaret Hospital*, 552 F.Supp. 833 (N.D.Ill.1982), in which the same court held that an Indiana doctor who regularly treated Illinois patients solicited by his Indiana hospital could be deemed to be "doing business" in Illinois for purposes of personal jurisdiction, is much closer to our facts than *Ballard* and fully supports our position. *Ballard* is therefore of no help to the hospital in this case.

The hospital next cites to *NTN Bearing Corp.*, 557 F.Supp. 1273, in which an Illinois manufacturer brought suit in the Northern District of Illinois against an Ohio distributor regarding allegedly unpaid commissions. The court in *NTN Bearing* held that Scott, Inc. did transact business in Illinois within the meaning of the Illinois long-arm statute. In passing on the issue, the court said:

> It does not offend traditional notions of fair play and substantial justice to require Scott, Inc. to come once more to Illinois to defend a suit based upon a contract under which it has so frequently and willingly come to Illinois. We conclude that our exercise of jurisdiction over defendant is proper.

*Id.* at 1277. In the final analysis, the ultimate decision of the court turned on the issue of venue, rather than on jurisdiction. *See* 557 F.Supp. at 1277–80. *NTN Bearing* supports our original opinion rather than the hospital's position.

The hospital also argues that under *Guerrero v. Copper Queen Hospital*, 112 Ariz. 104, 537 P.2d 1329 (1975), where an Arizona statute was construed as requiring all state-licensed hospitals to provide emergency care, the hospital here was required to accept Cubbage as a patient. In *Guerrero*, as here, the proximity of the hospital to the international border presented "special problems to it and to other hospitals similarly situated." 112 Ariz. at 107, 537 P.2d at 1332. This, of course, would apply to the hospital before us. We find no discernible distinction between an international and a state border in this situation. As mentioned in the opinion, over 25% of the hospital's patients during the four month period were residents of California. As a resort community, Parker can expect a large influx of Californians throughout the year. When the hospital located itself in that position, it was obviously fully aware of the fact that many Californians would be using its facilities.

*Ada Carol Thompson v. Sun City Community Hospital*, 142 Ariz. 1, 688 P.2d 647 (1983) (in banc), an opinion by the Supreme Court of Arizona, merely affirms *Guerrero*, holding that it was the public policy of that state that a state-licensed hospital may not deny emergency care to an indigent patient without valid cause. The holding in *Thompson* does not detract from federal courts' ability to effectuate the public policy of the state of California

to secure jurisdiction under its long-arm statute over citizens of Arizona living along its border and doing business with its citizens.

In any event, the hospital's theory that Arizona statutes would make its citizens, including the hospital, immune from liability under the California long-arm statute if, as we hold, the California long-arm statute gives jurisdiction to California courts under the facts and circumstances of this case is without merit. Neither the legislature nor the courts of Arizona can interfere with that jurisdiction. We have considered peripheral arguments made by the hospital's counsel, but find them equally without merit.

What is said in *Ballard* in connection with the Illinois long-arm statute being coextensive with the jurisdiction permitted under the United States Constitution is destroyed by the same court's decisions in *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981), and *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981), each of which held in substance that the Illinois long-arm statute is not coextensive with the Due Process Clause of the United States Constitution. Consequently, what is said in *Ballard* to the contrary is not controlling.

After due consideration, the panel votes to deny the petition for rehearing and Judges Hug and Boochever vote to deny the suggestion for a rehearing *in banc*. Judge Kilkenny recommends rejection of the suggestion for a rehearing *in banc*.

The full court has been advised of the suggestion for an *in banc* rehearing, and no judge of the court has requested a vote on the suggestion for rehearing *in banc*. FRAP 35(b).

Judge Hug continues to dissent for the reasons expressed in the dissent to the original opinion.

* The panel is unanimously of the opinion that oral argument is not required in this case. Fed.

The petition for rehearing is denied and suggestion for a rehearing *in banc* is rejected.