788 F.2d 535
 RICO Bus.Disp.Guide 6243
 BUTCHER'S UNION LOCAL NO. 498, UNITED FOOD AND COMMERCIAL
WORKERS; the United Food and Commercial Workers
International Union, AFL-CIO; United Food and Commercial
Workers International Union, Local 26, AFL-CIO; United Food
and Commercial Workers International Union, Local 7; James
Conley, et al., and Moses Esquivel, et al., Plaintiffs-Appellants,
v.
SDC INVESTMENT, INC. et al., Defendants,
and
Denver Lamb Company; Verner Averch; Montfort of Colorado,
Inc., Gene Meakins; and Ken Montfort, Defendants-Appellees.
 No. 85-1771.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 13, 1985.
Decided April 23, 1986.
 
 David Rosenfeld, Van Bourg, Weinberg, Roger, & Rosenfeld, San Francisco, Cal., for plaintiffs-appellants.
 William B. Shubb, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., Charles Sykes, Terry E. Schraeder, Bruckner & Sykes, Houston, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before DUNIWAY and TANG, Circuit Judges, and HUPP,* District judge.
 DUNIWAY, Circuit Judge:
 
 I. FACTS
 
 1
 The appellants are four labor unions and one individual union member. On April 4, 1983, they brought this civil action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Secs. 1961-1968, in the district court for the Eastern District of California. The complaint charged eighteen defendants with "union-busting" activities. The defendants included four employers and an officer/manager of each, several attorneys, and agents of the National Maritime Union ("NMU"). Appellees here are two of the defendant employers, Denver Lamb and Montfort of Colorado, and their officers.
 
 
 2
 The complaint charged that on four occasions defendant lawyers arranged for the recognition of NMU, an alleged "sham" union, in order to prevent the appellant Unions from organizing the defendant employers' workers. The Unions allege that this created two levels of racketeering activity: (1) a nationwide conspiracy created and carried out by defendant lawyers with the four separate employers; and (2) four individual conspiracies between the defendant lawyers, a defendant employer, and NMU agents. The Unions concede that the defendant employers had no connection with each other beyond the use of the same lawyers and that each individual conspiracy was largely independent.
 
 
 3
 Only one of the four defendant employers, SDC Investment, has its principal place of business in California. The other three, Denver Lamb, Montfort, and Eastern Market Beef Processing Corporation, operate out of Denver, Colorado; Grand Island, Nebraska; and Detroit, Michigan, respectively. None of the three corporations was formed under California law. All of these nonresident employers filed motions for dismissal alleging lack of personal jurisdiction and improper venue. Eastern Market is no longer in the case.
 
 
 4
 The Unions responded with their First Amended Complaint, but they did not make specific allegations regarding personal jurisdiction over the nonresident employers. Their justification for venue in the Eastern District of California included the statement that
 
 
 5
 the claim arose in this district, and/or each defendant resides, is found, has an agent and/or transacts his affairs in this district. To the extent venue is not established under 28 U.S.C. sections 1391, 1392 or 18 U.S.C. Section 1965(a), venue would be appropriate as to the remaining defendants in the interests of justice under 18 U.S.C. Section 1965(b).
 
 
 6
 Beyond this general assertion, the Amended Complaint did not make any reference to Denver Lamb's or Montfort's contacts with the forum state, California.
 
 
 7
 At a status conference, the Unions sought discovery in order to support their jurisdictional allegations. The district court denied their motion. Instead, it asked for additional memoranda on the question of the court's personal jurisdiction over several defendants, including Denver Lamb and Montfort.
 
 
 8
 In the two memoranda of points and authorities the Unions submitted, they argued that the court's personal jurisdiction and venue concerns were met by 18 U.S.C. Sec. 1965(b). It reads:
 
 
 9
 In any action under section 1964 of this chapter [RICO] in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.
 
 
 10
 (emphasis added). The Unions asserted that the ends of justice required nationwide service in this case because they had alleged a nationwide conspiracy that could only be challenged in one suit in which all defendants were present.
 
 
 11
 The Unions did not suggest any other means by which the court might obtain personal jurisdiction over the nonresident defendant employers. They did not allege that the nonresident employers had sufficient contacts with the forum state, California, to establish the court's jurisdiction on that ground. Only in their separate discussion of venue did they mention their belief that discovery would show Montfort having sales activity in the state. As to the other nonresident defendants, including Denver Lamb, the Unions stated only that they expected to show that each "conducted some business in the State of California." No more specific factual allegations were made.
 
 
 12
 On December 20, 1984, the district court granted Denver Lamb's and Montfort's motions to dismiss for lack of personal jurisdiction. The court held that the Unions had failed to allege a nationwide pattern of racketeering activity in which the four defendant employers were participants. It found instead that the Unions' allegations led "inexorably to the conclusion that this 'case' is in fact four separate cases each involving an independent conspiracy." It then concluded that it only had jurisdiction over the conspiracy centered around the California-based defendant employer. The court relied on section 1965(b)'s ends of justice provision to find jurisdiction over the nonresident lawyers and NMU agents who participated in the California conspiracy. The court did not consider any other possible bases for personal jurisdiction over Denver Lamb or Montfort.
 
 
 13
 II. Standard of Review and Jurisdictional Principles
 
 
 14
 The standard of review on appeal is de novo. Cubbage v. Merchent, 9 Cir., 1984, 744 F.2d 665, 667.
 
 
 15
 A federal court obtains personal jurisdiction over a defendant if it is able to serve process on him. See 2 Moore's Federal Practice p 4.02 at 4-44.17. In order to effect valid service of process, the federal court must meet two requirements: (1) some statute must authorize the service of process; and (2) the exercise of personal jurisdiction must not contravene any constitutionally protected right of the defendant. Wells Fargo & Co. v. Wells Fargo Express Co., 9 Cir., 1977, 556 F.2d 406, 413-14. If service is not authorized under a relevant federal statute, the federal court must rely on the jurisdictional statute of the state in which the federal court is located to obtain jurisdiction. Fed.R.Civ.P. 4(e, f); Securities Investor Protection Corp. v. Vigman, 9 Cir., 1985, 764 F.2d 1309, 1314. Once the defendant has challenged the exercise of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction. KVOS, Inc. v. Associated Press, 1936, 299 U.S. 269, 278, 57 S.Ct. 197, 200, 81 L.Ed. 183; Cubbage v. Merchent, 744 F.2d at 667.
 
 III. Personal Jurisdiction Under RICO
 
 16
 In section 1965(b), Congress provided for service of process upon RICO defendants residing outside the federal court's district when it is shown that "the ends of justice" require it. 18 U.S.C. Sec. 1965(b). See S.Rep. No. 91-617, 91st Cong., 1st Sess. 160-61 (1969); H.R.Rep. No. 91-1549, 91st Cong., 1st Sess., reprinted in 1970 U.S.Code Cong. & Ad.News 4007, 4010, 4034. Under the standard rules of statutory construction, the court should construe this provision in accordance with the ordinary meaning of the words used, Russello v. United States, 1983, 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17, and the "purpose or object" Congress sought to accomplish by the legislation. Watt v. Alaska, 1981, 451 U.S. 259, 266 n. 9, 101 S.Ct. 1673, 1678 n. 9, 68 L.Ed.2d 80.
 
 
 17
 The district court correctly applied these rules in concluding that the phrase "the ends of justice", although employed in various contexts, see, e.g., Fed.R.Civ.P. 15(a) (motions to amend pleadings); Speedy Trial Act, 18 U.S.C. Sec. 3161(h)(8)(A) (granting continuances), does not have an ordinary and unambiguous meaning. See Sanders v. United States, 1963, 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (the "ends of justice" standard "cannot be too finely particularized.") It then examined the RICO statute and its legislative history to determine Congress' intent in providing nationwide service of process when "justice" requires it. Noting Congress' express statement that the purpose of the Act was to eradicate organized crime in this country, P.L. 91-452, 84 Stat. 922, reprinted in 1970 U.S.Code Cong. & Admin.News 1073, and the phrase's location in the section providing for nationwide service of process, it concluded that Congress intended the "ends of justice" provision to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial. We concur in this analysis. Accord Farmers Bank of the State of Delaware v. Bell Mortgage Corp. (Farmers Bank II), D.Del., 1978, 577 F.Supp. 34, 35.
 
 
 18
 The Unions claim two errors in the district court's application of section 1965(b) to this case. First, they argue that section 1965(b) permits, "in most cases, the exercise of jurisdiction over all Defendants in a RICO complaint." Without this interpretation, they contend, there is a potential "jurisdictional gap" over a multidistrict racketeering enterprise. Second, they assert that they did, in fact, allege that Denver Lamb and Montfort were part of a single conspiracy that triggered the nationwide service provision of section 1965(b).
 
 
 19
 The Unions are incorrect on both counts. As section 1965(b) makes clear, the right to nationwide service in RICO suits is not unlimited. For nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators. See Farmers Bank II, 577 F.Supp. at 35. This standard does not create jurisdictional gaps because it does not prevent plaintiffs from pursuing separate suits against nonresident RICO defendants who did not participate in the single racketeering enterprise. Thus, merely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide service provisions.
 
 
 20
 The Unions also failed to allege a multidistrict conspiracy that encompassed Denver Lamb and Montfort. As the Unions concede, none of the four defendant employers had any specific knowledge of or participation in any of the other conspiracies. The involvement of the defendant lawyers and NMU agents in each of the individual conspiracies does not overcome this fact. The district court properly concluded that the complaint did not allege a single nationwide RICO conspiracy as required for nationwide service of process under the ends of justice provision of section 1965(b).
 
 
 21
 IV. Personal Jurisdiction Under "Traditional Grounds"
 
 
 22
 The Unions also argue that the district court erred by not considering "traditional grounds" to find personal jurisdiction over Denver Lamb and Montfort. They say that they alleged sufficient facts in their amended complaint to establish the necessary California contacts and, somewhat inconsistently, that they were improperly denied discovery that would have allowed them to establish the required contacts. We disagree on both points.
 
 
 23
 The initial problem with the Unions' argument is that they never define what they mean by "traditional grounds" for establishing personal jurisdiction. Presumably, they are referring to the possibility of the district court obtaining jurisdiction under California's long-arm statute, Cal.Code Civ.Proc. Sec. 410.10. This statute permits a court to exercise in personam jurisdiction in all instances that would not violate due process. Cubbage v. Merchent, 9 Cir., 1984, 744 F.2d 665, 667. Due process, in turn, permits the exercise of personal jurisdiction over a nonresident defendant in two instances:If the defendant corporation has sufficient deliberate "minimum contacts" with the forum state, a court may acquire in personam jurisdiction over it in actions which arise from those forum contacts. If, however, a corporation's activities in the forum are so "continuous and systematic" that the corporation may in fact be said already to be "present" there, it may also be served in causes of action unrelated to its forum activities.
 
 
 24
 Wells Fargo & Co. v. Wells Fargo Express Co., 9 Cir., 1977, 556 F.2d 406, 413 (footnote omitted); see Cubbage v. Merchent, 744 F.2d at 667-68. Thus, in order to establish personal jurisdiction under California's long-arm statute, the Unions would have had to allege and eventually prove that the RICO action against Denver Lamb and Montfort either arose out of sufficient minimum contacts with California or that both firms had such "continuous and systematic" California activities that rendered them "present" for service of process even if the cause of action did not arise out of these activities. Id.
 
 
 25
 The Unions failed to allege sufficient facts to meet either test. Neither their original nor their amended complaint cites the California statute, mentions the possibility of establishing personal jurisdiction under anything other than section 1965(b), or alleges specific California contacts for either appellee. The only possible reference to appellees' contacts with the state is contained in the amended complaint's assertion that venue was appropriate because "the claim arose in this district, and/or each defendant resides, is found, has an agent and/or transacts his affairs in this district." This nonspecific conclusory statement is not enough to show either minimum contacts giving rise to the RICO claim or continuous contacts making defendants liable in California for out-of-state activities. See Kaylor v. Fields, 8 Cir., 1981, 661 F.2d 1177, 1182-83 (although pleadings are to be liberally construed, the complaint must contain something more than mere conclusory statements unsupported by specific facts).
 
 
 26
 We note that, when given the opportunity to expand on their assertions after defendants' challenge to the court's personal jurisdiction, the Unions failed even to raise the issue of jurisdiction under the California statute. Instead, they relied entirely on section 1965(b). Under these circumstances, the district court did not err in failing to consider the possibility of exercising personal jurisdiction on traditional grounds.
 
 
 27
 The Unions also apparently contest the district court's denial of discovery on the issue of personal jurisdiction. Discovery should ordinarily be granted where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Data Disc, Inc. v. Systems Technology Associates, Inc., 9 Cir., 1977, 557 F.2d 1280, 1285 n. 1; Wells Fargo & Co., 556 F.2d at 430 n. 24. The trial court still has broad discretion to permit or deny discovery, however, and its decision will not be reversed except "upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." Data Disc, 557 F.2d at 1285 n. 1. In their brief, the Unions state only that they "believe" that discovery will enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction. This speculation does not satisfy the requirement that they make "the clearest showing" of actual and substantial prejudice.
 
 
 28
 In addition, we are unwilling to fault the district court, where, as here, plaintiffs failed to give the district court any notice whatsoever that they were seeking discovery in order to establish personal jurisdiction under the state long-arm statute. The Unions' original discovery request stated only that they would "need to engage in discovery in order to support jurisdictional allegations." The request did not indicate the theory upon which these allegations were based. After the trial judge denied their motion, the Unions renewed their request in their Memorandum of Points and Authorities on personal jurisdiction and venue, yet again failed to notify the court that they were seeking to establish the court's personal jurisdiction under anything other than section 1965(b). In discussing venue in the Memorandum, the Unions stated that they expected discovery to show that Montfort sold its product widely in California, but made no claims as to the other nonresident defendants, including Denver Lamb, and did not relate its expectations to the court's concern with its personal jurisdiction over these defendants. This pattern continued in the Unions' concluding memorandum, in which their only reference to defendants' California contacts was the assertion that they did not need to establish such contacts as to each defendant because of the nationwide service provisions of section 1965(b). Under these circumstances, we cannot conclude that the district court abused its discretion in denying discovery.
 
 
 29
 AFFIRMED.
 
 
 
 *
 The Honorable Harry L. Hupp, United States District Judge for the Central District of California, sitting by designation