92 F.3d 1194
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNIC OIL COMPANIA, Plaintiff-Appellant,
v.
INTERNACIONAL DE GRANOS E INSUMOS S.A. DE C.V.; Lubricantes
76 De Honduras S.A.; Caramat Corp.; Jose
Gonzales, Wilfredo Leva; Erick Sanchez,
Defendants-Appellees.
 No. 94-16753.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 9, 1996.*
Decided July 31, 1996.
 
 Before: WOOD, JR.,** CANBY, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Unic Oil Compania appeals the district court's order granting the motion of defendants Caramat Corporation and Jose Gonzales[1] to dismiss Unic's complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b). We REVERSE.
 
 BACKGROUND
 
 3
 Unic Oil Compania ("Unic") is a California partnership affiliated with UNOCAL 76 and engaged in the export marketing of various lubricating products to Latin America. Defendant-appellee Jose Gonzales ("Gonzales"), a citizen of Florida, is alleged to be an officer, principal, and/or agent of defendant Camarat Corporation ("Camarat"), a Florida corporation, and of International De Granos E. Insumos S.A. De C.V. ("Inginsa") and Lubricantes 76 De Honduras S.A. ("Lubricantes"), both citizens of the Republic of Honduras. Camarat and Gonzales are alleged to be authorized principals, agents, employees, partners, and/or joint venturers of all other defendants in the action.
 
 
 4
 On June 9, 1992, Unic executed a Letter of Intent in favor of Inginsa's parent company, Leva's Import & Export, whereby Unic granted to that company the exclusive right to distribute UNOCAL 76 lubricating products within Honduras for a six-month period. Unic alleges that Gonzales, through telephone calls from Miami, introduced his Honduran business partners to Unic's President, Richard J. Gordillo, Jr., and otherwise solicited Unic's business during negotiations in Honduras. In July, 1992, Unic shipped four containers of its products to Leva's Import & Export, which were paid for by Caramat through wire transfers from a Miami bank.
 
 
 5
 In November, 1992, Unic concluded an Exclusive Distribution Agreement with Inginsa, granting it exclusive rights for five years. In exchange Inginsa agreed to create a market for Unic's products in Honduras and to purchase forty container loads of Unic's products each year. The agreement included a choice of law clause specifying California law and calling for arbitration of any disputes to take place in California. Unic does not allege that either Camarat or Gonzales were parties to either the letter of intent or the distribution agreement.
 
 
 6
 Unic made its first shipment of five containers of products to Inginsa in December, 1992. Unic alleges that even though payment of the $62,251.50 price was due on delivery, Gonzales induced Unic to ship the containers by issuing a post-dated check from Camarat in that amount. The Miami bank on which the check was drawn dishonored the check for insufficient funds in January, 1993, after which Unic threatened to terminate the agreement with Inginsa.
 
 
 7
 Unic alleges that following these difficulties and the arrest of two officers and/or partners of Inginsa in February, 1993, a new corporation, Lubricantes, was formed specifically to take over Inginsa's rights granted by the distribution agreement. Unic alleges that Gonzales, as a "partner" of Lubricantes, again began negotiations, urging Gordillo to terminate the agreement with Inginsa and to execute a new letter of intent with Lubricantes. In exchange for these actions, Lubricantes would pay Inginsa's debt to Unic, would purchase two containers of Unic products a month until a new distribution agreement could be concluded, and would develop customer relationships in Honduras. Such a letter was executed in March of 1993.
 
 
 8
 Lubricantes performed none of its duties except making a partial payment of $42,000 on the $62,251.50 debt. Unic canceled the letter of intent in June of 1993, and brought suit alleging several claims including fraud and tortious interference with contract.
 
 
 9
 Camarat and Gonzales filed a motion to dismiss for lack of both personal and subject matter jurisdiction. The district court granted the motion on the basis of lack of personal jurisdiction, finding that the contacts alleged--telephone conversations and the mailing of checks--were insufficient to support either general or specific jurisdiction. Gonzales has filed no brief in response to Unic's appeal.
 
 DISCUSSION
 
 10
 In order to establish personal jurisdiction, the plaintiff must show both that the forum state's long-arm statute confers personal jurisdiction over the out-of-state defendant(s) and that the exercise of jurisdiction does not violate federal constitutional principles of due process. The California long-arm statute provides that California courts "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal.Civ.Proc.Code § 410.10. This statutory limitation is "coextensive with the outer limits of due process" under the state and federal constitutions. Data Disc, Inc. v. Systems Tech. Assoc., 557 F.2d 1280, 1286 (9th Cir.1977). Jurisdiction in this case is thus constrained only by constitutional principles.
 
 
 11
 Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain "minimum contacts" with the forum state. Maintenance of the action in the forum must not offend "traditional conception[s] of fair play and substantial justice," International Shoe v. Washington, 326 U.S. 310, 320 (1945), and the defendant's "conduct and connection with the forum State" must be such that the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).
 
 
 12
 Personal jurisdiction over a non-resident defendant may be either general or specific. Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 nn. 8-9 (1984). General jurisdiction applies where a defendant's activities in the forum state are "substantial" or "continuous and systematic," even if the cause of action is unrelated to those activities. Data Disc, 557 F.2d at 1287 (internal quotations omitted). Where general jurisdiction is not found, a court may still exercise specific jurisdiction if the defendant has sufficient contacts with the forum state in relation to the cause of action. Id.
 
 
 13
 Though alleging both general and specific jurisdiction in the district court, Unic has abandoned its general jurisdiction argument and on appeal claims only specific jurisdiction. In Data Disc, we held that a plaintiff attempting to establish specific jurisdiction must show that three requirements are satisfied:
 
 
 14
 (A) the non-resident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
 
 
 15
 (B) the claim must be one which arises out of or results from defendant's forum-related activities; and
 
 
 16
 (C) the exercise of jurisdiction must be reasonable.
 
 
 17
 557 F.2d at 1287; Cubbage v. Merchent, 744 F.2d 665, 668 (9th Cir.1984), cert. denied, 105 S.Ct. 1359 (1985).
 
 
 18
 The burden of proof is on the plaintiff to show that jurisdiction is appropriate, but in the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. Data Disc, 557 F.2d at 1285. Here the district court considered only the pleadings and other documents, thus we must only determine if Unic has made a prima facie showing of personal jurisdiction, treating their allegations as true. Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir.1990).
 
 
 19
 Unic alleges that both its tort claims and the contacts related to the letters of intent and distribution agreement are sufficient to establish specific jurisdiction over Gonzales. Specifically, Unic argues that the district court incorrectly addressed its claims as involving only contractual issues, ignoring its allegations of intentional tortious acts.
 
 A. Purposeful Availment
 
 20
 Purposeful availment of the forum requires the defendant to perform some type of affirmative conduct which allows or promotes the transaction of business within the forum state. Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir.1988). For example, where a defendant solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir.1986).
 
 
 21
 Important to recognize here is that somewhat different purposeful availment tests are applied to contract and tort cases. See Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1486 (9th Cir.1993). In tort cases, it may be sufficient for the defendant's only contact with the forum state to be the purposeful direction of a foreign act having an effect in the forum state. Calder v. Jones, 465 U.S. 783, 789 (1984); Haisten v. Grass Med. Reimbursement Fund, 784 F.2d 1392, 1397 (9th Cir.1986). We have held that a non-resident defendant's act of soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business. Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir.1990), rev'd on other grounds, 111 S.Ct. 1522 (1991). Given these standards, and the fact that we must accept Unic's allegations as true, we find the district court erred in its purposeful availment analysis.
 
 
 22
 Unic's claims, including those sounding in tort, are related to the letters of intent and distribution agreement concluded between Unic and the Honduran companies. Gonzales, the only defendant remaining in this appeal, was not a party to any of these documents. Yet his role involved extensive solicitation of business and several negotiations regarding the documents by telephone from Miami and on location in Honduras. He was also responsible for the issuance and mailing of checks (drawn on a Miami bank) to pay for product purchases mandated by these documents.[2] Thus Gonzales affirmatively sought out Unic and was involved at several stages in the solicitation and negotiation of various business agreements, some allegedly for his own benefit. These contacts resulted in the conclusion of these agreements and, Unic alleges, in the reliance which caused the transfer of business from Inginsa to Lubricantes. These contacts and developments form the basis for the tort claims alleged here. We have held that "[t]he inducement of reliance in California is a sufficient act within California to satisfy the requirement of minimum contacts where the cause of action arises out of that inducement." Data Disc, 557 F.2d at 1288. The contacts and facts alleged by Unic meet this rather low threshold.
 
 
 23
 The district court noted that "use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir.1985) (citations omitted), cert. denied, 475 U.S. 1122 (1986). While this may apply in other contexts, especially those dealing with contract issues, we have also held that "the reality of modern commercial life is that many transactions take place solely by mail or wire across state lines, obviating the need for physical presence in the state toward which the defendant's activities are directed." Shute, 897 F.2d at 382. Moreover, the choice of law and arbitration clauses in the agreement, which specified the law of California and travel to that state for arbitration, clearly indicate that further contacts with California were anticipated and foreseeable. Accepting Unic's allegations as true, as we must, we find Unic has made a prima facie showing of personal jurisdiction.
 
 B. Arising Out Of
 
 24
 This second requirement is ordinarily satisfied if "but for" the contacts alleged, the cause of action would not have arisen. This element is not disputed here.
 
 C. Reasonableness
 
 25
 We evaluate seven factors in considering whether the exercise of jurisdiction would be reasonable. These are:
 
 
 26
 (1) the extent of the defendant's purposeful injection into the forum;
 
 
 27
 (2) the defendant's burdens from litigating in the forum;
 
 
 28
 (3) the extent of conflict with the sovereignty of the defendant's state;
 
 
 29
 (4) the forum state's interest in adjudicating the dispute;
 
 
 30
 (5) the most efficient judicial resolution of the controversy;
 
 
 31
 (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
 
 
 32
 (7) the existence of an alternative forum.
 
 
 33
 Terracom v. Valley Nat'l Bank, 49 F.3d 555, 561 (9th Cir.1995). "Once purposeful availment has been established, the forum's exercise of jurisdiction is presumptively reasonable. To rebut that presumption, a defendant must present a compelling case that the exercise of jurisdiction would, in fact, be unreasonable." Roth v. Garcia Marquez, 942 F.2d 617, 621-22 (9th Cir.1991). Gonzales has submitted no argument on appeal; even considering his submissions to the district court regarding these factors, we conclude that these do not constitute a "compelling case" that the district court's assertion of personal jurisdiction would be unreasonable.
 
 CONCLUSION
 
 34
 Unic has satisfied its prima facie showing of jurisdictional facts sufficient to support personal jurisdiction over defendant Gonzales. On remand, the district court may either assume jurisdiction over Gonzales, or it may grant him an opportunity to explore the jurisdictional issue at a preliminary hearing pursuant to Federal Rule of Civil Procedure 12(d). If the court in its discretion elects to receive evidence in proof of the jurisdictional question, Unic must then satisfy the higher burden of proving the jurisdictional facts by a preponderance of the evidence. Data Disc, 557 F.2d at 1289.
 
 
 35
 For the foregoing reasons, we reverse and remand this matter for further proceedings.
 
 
 36
 REVERSED AND REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 After the filing of this appeal, defendant-appellee Caramat Corporation filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court, Southern District of Florida, on June 7, 1995. Bankruptcy proceedings were concluded on February 27, 1996. Unic Oil concedes that this appeal has therefore become moot as to Caramat, and therefore continues only as to defendant-appellee Jose Gonzales
 
 
 [2]
 The checks in question were drawn by defendant Caramat. Gonzales was the Director of Sales for Caramat, and allegedly was responsible for the issuance of the checks. Ordinarily, "a corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that forum." Forsythe v. Overmyer, 576 F.2d 779 (9th Cir.), cert. denied, 439 U.S. 864 (1978). However, Unic also alleges that Gonzales was or is a principal, agent, or joint venturer of defendant Lubricantes. This assertion is disputed, but we accept the allegation as true for the purposes of this appeal