**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARK COX; ESTATE OF SUSAN A COX, by and through Personal Representative Mark Cox; SUSAN A. COX, *Plaintiffs - Appellants*, v. GRITMAN MEDICAL CENTER; PATRICIA N. MARCIANO, MD; TODD BLEDSOE, PA-C, *Defendants - Appellees*, and UNKNOWN PARTIES, named "Others TBD", *Defendant*. | No. 24-1947 D.C. No. 2:23-cv-00031-MKD ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Mary K. Dimke, District Judge, Presiding

Argued and Submitted April 3, 2025
Portland, Oregon

Filed February 11, 2026
Amended March 16, 2026

Before: Jay S. Bybee and Danielle J. Forrest, Circuit
Judges, and Xavier Rodriguez, District Judge.[*]

Order;
Opinion by Judge Forrest

## SUMMARY[**]

### Personal Jurisdiction

The panel reversed the district court's dismissal for lack of personal jurisdiction of a wrongful-death and survivor action brought by the Estate of Susan Cox and Susan's husband Mark Cox (Plaintiffs) against Gritman Medical Center and Patricia Marciano, Susan's primary care doctor (Defendants).

Susan and Mark Cox lived in Albion, Washington. Susan died from an overdose allegedly related to Dr. Marciano's over-prescription of pharmaceutical drugs. Plaintiffs filed this action in the Eastern District of

---

[*] The Honorable Xavier Rodriguez, United States District Judge for the Western District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Washington. Defendants are Idaho residents, and the medical treatments they provided to Susan occurred in Idaho.

The panel held that the district court's exercise of personal jurisdiction over Defendants satisfied Washington's long-arm statute and the Due Process Clause of the Fourteenth Amendment because Defendants were located on the Idaho/Washington border, specifically cultivated treatment relationships with Washington residents, and routinely transmitted Susan's prescriptions to Washington pharmacies at her request.

The panel did not reach the issue of whether the district court properly denied jurisdictional discovery related to whether Gritman is subject to general personal jurisdiction in Washington. Defendants are subject to specific personal jurisdiction in Washington, and therefore Plaintiffs were not prejudiced by the denial of jurisdictional discovery as to general jurisdiction.

The panel also held that venue was proper in the Eastern District of Washington because the record establishes that a substantial part of the events giving rise to Plaintiffs' claims occurred in the Eastern District of Washington.

## COUNSEL

Mary E. Schultz (argued), Mary Schultz Law PS, Spangle, Washington, for Plaintiffs-Appellants.

Anne Schroeder (argued) and William J. Schroeder, KSB Litigation PS, Spokane, Washington; Amanda K. Thorsvig (argued) and Michele Atkins, Fain Anderson VanDerhoef

Rosendahl O'Halloran Spillane PLLC, Seattle, Washington; Markus W. Louvier and Sean M. King, Evans Craven & Lackie PS, Spokane, Washington; for Defendants-Appellees.

**ORDER**

The slip opinion filed on February 11, 2026, is amended as follows:

| | |
|---|---|
| Page 11, line 18 | Insert <, but not exclusively,> between <We typically> and <use the "purposeful availment" framing for tort claims>. |
| Page 11, line 20 | Insert <; *Briskin*, 135 F.4th at 751 n.10> after <*Herbal Brands*, 72 F.4th at 1090>. |
| Page 12, line 1 | Insert <"> before <contacts with the forum>. |
| Page 12, lines 1–3 | Delete <and that the analysis should be on the contacts with the state, not "with persons who reside there"> and insert <State itself" and not merely "contacts [the defendant] makes by interacting with other persons affiliated with the State">. |
| Page 14, lines 7–9 | Delete <But we must look at Dr. Marciano's "contacts with the forum . . . itself, not [her] contacts with persons who reside there."> and insert <But Dr. Marciano treated Susan in Idaho, not in Washington, and we must |

| | |
|---|---|
| | look at Dr. Marciano's "contacts with the forum . . . itself" because "a defendant's relationship wit ha plaintiff or third party [who is a resident of the forum], standing alone, is an insufficient basis for jurisdiction.">. |
| Page 14, line 11 | Delete <relationship> and insert <contacts>. |
| Page 14, line 11 | Delete <was> and insert <in Idaho were>. |

An amended version of the opinion, reflecting these changes, accompanies this order.

## OPINION

FORREST, Circuit Judge:

This is a personal-jurisdiction case. Susan Cox allegedly died of a fatal overdose of medications prescribed by her primary care doctor, Defendant Patricia Marciano. Susan's husband, Mark Cox, and her estate (Plaintiffs) sued Dr. Marciano and Gritman Medical Center (Defendants) in the Eastern District of Washington, where the Coxes lived. The Defendants are Idaho residents, and the medical treatment they provided to Susan occurred in Idaho. The district court denied jurisdictional discovery related to Gritman and dismissed this action for lack of personal jurisdiction over Defendants. Plaintiffs appeal both decisions. If personal jurisdiction exists, the parties also dispute whether venue properly lies in Idaho. We reverse and remand.

Given that Defendants are located on the Idaho/Washington border, that they specifically cultivated treatment relationships with Washington residents, and that they routinely transmitted Susan's prescriptions to Washington pharmacies at her request, the district court's exercise of personal jurisdiction over Defendants satisfies Washington's long-arm statute and the Due Process Clause of the Fourteenth Amendment. For that reason, we do not reach whether the district court properly denied jurisdictional discovery. We conclude, moreover, that venue was proper in the Eastern District of Washington.

## BACKGROUND

The relevant events occurred in an area of Eastern Washington and Northern Idaho where there is significant cross-border activity. Gritman owns and operates numerous facilities in Moscow, Idaho—a town located immediately adjacent to the border. Gritman is incorporated under Idaho law and headquartered in Idaho. It previously had a clinic in Pullman, Washington, which neighbors Moscow. But for the last 25 years it has operated only in Idaho. Gritman advertises via billboards, newspapers, radio, television, and social media throughout the Lewis and Clark Valley region, which encompasses parts of both Idaho and Washington, "to make people aware of Gritman and the services Gritman can provide at its facilities in Idaho." Gritman also accepts, and advertises that it accepts, Washington Medicaid.

Susan and Mark Cox lived in Albion, Washington, which is a small town less than 20 miles from Moscow. In 2016, Dr. Marciano began treating Susan for spinal pain. Dr. Marciano lives and practices medicine exclusively in Idaho. In 2018, Gritman purchased several clinics from the entity that previously employed

Dr. Marciano, and Dr. Marciano continued to work at these facilities. [1] Dr. Marciano prescribed Susan a variety of pharmaceuticals, in varying doses and combinations, including the opioids hydrocodone-acetaminophen and oxycodone-acetaminophen.

Susan could request refills of her prescriptions without an appointment, either over the phone or through Gritman's electronic "Patient Portal." Gritman's policy was to honor a patients' pharmacy choice, "even if the pharmacy is located outside of Idaho." At Susan's request, Gritman sent her prescriptions to pharmacies in Pullman. In 2022, Susan died from an overdose allegedly related to Dr. Marciano's over-prescription of pharmaceutical drugs.

Plaintiffs filed this wrongful-death and survivor action against Defendants in the Eastern District of Washington. Plaintiffs' claims are based on Washington law. Defendants moved to dismiss for lack of personal jurisdiction and, alternatively, to transfer venue to the District of Idaho. The district court denied Plaintiffs' request for jurisdictional discovery related to whether Gritman is subject to general personal jurisdiction in Washington and granted Defendants' motion to dismiss. It held that Washington's long-arm statute did not reach Defendants and that due process did not permit exercising specific jurisdiction over these parties because they did not purposefully avail themselves of the forum or purposefully direct their case-related activities to Washington. Plaintiffs timely appealed.

---

[1] Gritman insists that Dr. Marciano is an independent contractor, but it does not argue that Dr. Marciano's purported contractor status is relevant to the personal-jurisdiction analysis. Thus, we do not address this issue. *See Maldonado v. Morales*, 556 F.3d 1037, 1048 n.4 (9th Cir. 2009) ("Arguments made in passing and inadequately briefed are [forfeited].").

## DISCUSSION

### A.  Personal Jurisdiction

We review the district court's dismissal for lack of personal jurisdiction de novo. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where the district court grants dismissal without an evidentiary hearing, as here, the plaintiff "need only make a prima facie showing of the jurisdictional facts" based on the pleadings and affidavits. *Id.* (citation omitted). We must accept as true all uncontroverted allegations in the complaint and resolve disputes in the parties' affidavits in the plaintiff's favor, but disputed allegations in the complaint not supported by evidence or affidavits need not be accepted as true. *Id.*

"Personal jurisdiction over an out-of-state defendant is proper where permitted by a long-arm statute and where the exercise of jurisdiction does not violate federal due process." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020). We address each requirement.

### 1.  Washington's Long-Arm Statute

Where no applicable federal statute authorizes service of process on an out-of-state defendant, as here, federal courts look to the law of the state in which the district court sits. Fed. R. Civ. P. 4(k)(1)(A); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1089 (9th Cir. 2023). "In interpreting state law, federal courts are bound by the pronouncements of the state's highest court. If the particular issue has not been decided, federal courts must predict how the state's highest court would resolve it." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002) (citation omitted).

Washington's long-arm statute authorizes personal jurisdiction over defendants "who in person or through an agent" do various acts, including, as relevant here, "transact[ing] . . . any business within [Washington]" or "commi[tting] . . . a tortious act within [Washington]." Wash. Rev. Code § 4.28.185(1)(a), (b).    Because we conclude that the transaction-of-business standard laid out in § 4.28.185(1)(a) has been satisfied, we need not address whether a tort has been committed in Washington under § 4.28.185(1)(b).[2]

Section 4.28.185 of Washington's long-arm statute was enacted in 1959. *See* 1959 Wash. Sess. Laws 669, 669–70. The Washington Supreme Court recognized early on that this statute, "*except as may be limited by its terms*," was intended to "assert jurisdiction over nonresident defendants to the extent permitted by the [Fourteenth Amendment] due-process clause." *Tyee Constr. Co v. Dulien Steel Prods., Inc.*, 381 P.2d 245, 247 (Wash. 1963) (emphasis added) (citation omitted); *see also Deutsch v. W. Coast Mach. Co.*, 497 P.2d 1311, 1314 (Wash. 1972) (same). Thus, the Washington Supreme Court initially held that the personal-jurisdiction inquiry was twofold: (1) whether "the statutory language purport[s] to extend jurisdiction" and (2) whether "imposing

---

[2] Though this analysis may seem counterintuitive given that this dispute arises under tort law, the Washington Supreme Court has favorably cited the view that the transaction-of-business standard "is not limited to actions in contract; it applies as well to actions in tort when supported by a sufficient showing of facts." *Callahan v. Keystone Fireworks Mfg. Co.*, 435 P.2d 626, 637 (Wash. 1967) (quoting *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 209 N.E.2d 68, 81 (N.Y. 1965)). We conclude that the transaction-of-business standard is readily met here, and so we do not opine on whether the commission-of-a-tort analysis would support the same result.

jurisdiction [would] violate constitutional principles." *Grange Ins. Ass'n v. State*, 757 P.2d 933, 935 (Wash. 1988).

As an initial matter, Dr. Marciano contends that § 4.28.185(1)(a) does not apply because she did not transact business in Washington. We disagree. Section 4.28.185(1)(a) imposes a minimal threshold: "[t]he transaction of *any* business within [Washington]." (Emphasis added.) Multiple jurisdictions have interpreted similar statutory language to encompass all business transactions other than the most isolated or irrelevant. *See, e.g.*, *Paterno v. Laser Spine Inst.*, 23 N.E.3d 988, 992–93 (N.Y. 2014); *Cannonball Fund, Ltd. v. Dutchess Cap. Mgmt., LLC*, 993 N.E.2d 350, 369 (Mass. App. Ct. 2013). In other words, the transaction-of-business provision is triggered by all transactions but the kind of "'random,' 'fortuitous,' or 'attenuated'" ones that would independently raise due-process concerns. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citation omitted); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 247 (2012) ("A statute should be interpreted in a way that avoids placing its constitutionality in doubt."). We predict the Washington Supreme Court would adopt this same interpretation. *See Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007) (explaining that, in applying state law, this court "must predict how the state's highest court would decide the question"). Because this case relates to Dr. Marciano's repeated transmission of prescriptions to Washington pharmacies, as discussed further below, the long-arm statute

does not constitute an independent bar to the district court's exercise of personal jurisdiction.[3]

We further note that the distinction between the statutory analysis under Washington's long-arm statute and the due-process inquiry has eroded over the years. A little over a decade ago, the Washington Supreme Court observed that, as relates to the long-arm statute's transaction-of-business provision, "Washington courts are authorized to assert personal jurisdiction over nonresident defendants to the extent permitted by the federal due process clause." *Failla v. FixtureOne Corp.*, 336 P.3d 1112, 1116 (Wash. 2014) (en banc). We are not aware that the Washington Supreme Court has deviated from this pronouncement in the years since. Therefore, whether personal jurisdiction is authorized under the transaction-of-business provision rises or falls with the due-process analysis. *See, e.g.*, *Yamashita v. LG Chem., Ltd.*, 48 F.4th 993, 996–97 (9th Cir. 2022) (observing that, where a state's long-arm statute is coextensive with federal due-process requirements, "the answer to the federal law question may dictate the answer to the state law question").

### 2. Due Process

Because we conclude that the transaction-of-business provision in Washington's long-arm statute poses no independent bar to personal jurisdiction, we now consider whether exercising jurisdiction over Defendants comports with due process. The Due Process Clause of the Fourteenth Amendment imposes three requirements for exercising specific jurisdiction over an out-of-state defendant: (1) the

---

[3] Gritman did not discuss Washington's long-arm statute other than to note that it is coextensive with due process. Thus, as relates to Gritman, we address only the due-process analysis. *See Maldonado*, 556 F.3d at 1048 n.4.

defendant must have minimum contacts with the forum; (2) the claim must "arise[] out of or relate[] to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Briskin v. Shopify*, 135 F.4th 739, 750–51 (9th Cir. 2025) (en banc) (citation omitted); *see Walden v. Fiore*, 571 U.S. 277, 283 (2014). The plaintiff bears the burden on the first two elements; if they are satisfied, the defendant bears the burden to show that the final element is not satisfied. *Briskin*, 135 F.4th at 751.

### a.  Minimum Contacts

A defendant has minimum contacts with the forum when that defendant has either purposefully availed itself of the privilege of conducting business in the forum or purposefully directed its activities at the forum. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Briskin*, 135 F.4th at 750–51. We typically, but not exclusively, use the "purposeful availment" framing for tort claims like those asserted in this case. *Herbal Brands*, 72 F.4th at 1090; *Briskin*, 135 F.4th at 751 n.10.

"Purposeful availment" occurs when "the defendant has taken deliberate action within the forum state or has created continuing obligations to forum residents." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088 (9th Cir. 2023) (citation modified); *accord Burger King*, 471 U.S. at 475–76. At bottom, we must "ask whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Herbal Brands*, 72 F.4th at 1090 (citation modified); *see also Walden*, 571 U.S. at 284–85

(emphasizing that "minimum contacts" requires that the defendant create "contacts with the forum State itself" and not merely "contacts [the defendant] makes by interacting with other persons affiliated with the State"). While "physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden*, 571 U.S. at 285 (citation omitted). Mere foreseeability that an action will cause an injury in the forum is insufficient to find minimum contacts. *Burger King*, 471 U.S. at 474.

We have examined the due-process requirements for personal jurisdiction in two medical-malpractice cases. First, in *Wright v. Yackley*, we held that a South Dakota doctor who prescribed medication to a patient who later moved to Idaho was not subject to personal jurisdiction in Idaho. 459 F.2d 287, 289–91 (9th Cir. 1972). The patient had lived in South Dakota and "was taking drugs acquired by prescriptions permitting unlimited refills." *Id.* at 288. After moving to Idaho, the patient sought to refill her prescriptions at an Idaho pharmacy, and, at the patient's request, the doctor "furnished copies of the original prescriptions" to the pharmacy. *Id.* The patient sued the doctor in Idaho after suffering injuries allegedly caused by the medication. *Id.*

We held that the South Dakota doctor did not purposefully avail himself of the privilege of doing business in Idaho because his only contact with Idaho was a "chance occurrence" resulting from the patient's unilateral choice to relocate. *Id.* at 290. The doctor made "no systematic or continuing effort . . . to provide services which [were] to be felt in [Idaho]." *Id.* That effects from the prescription filled in Idaho foreseeably would be felt in Idaho was insufficient to satisfy due process. *See id.* at 289–90, 289 n.4. Indeed, we

emphasized that for "personal services [the] focus must be on the place where the services are rendered," otherwise "rendition of such services" would become "a portable tort" with personal jurisdiction lying anywhere a patient "may choose to go." *Id.* at 289–90.

On the other hand, in *Cubbage v. Merchant* we held that an Arizona hospital and Arizona doctors were subject to personal jurisdiction in California where they made "continuing efforts to provide services in California, and ha[d] not shown any efforts . . . to discourage California patients." 744 F.2d 665, 669 (9th Cir. 1984). In that case, similar to this one, the hospital and doctors were located in a rural area near the Arizona-California border and were licensed only in Arizona. *Id.* at 667. Over one-fourth of the hospital's patients were California residents, the hospital and doctors advertised in telephone listings distributed in California, and the doctors participated in California's Medicare program and received reimbursement from California for services rendered to its residents. *Id.* On those facts, we "decline[d] to apply *Wright*'s broad language," and instead concluded that the defendants' business and marketing activities were sufficient to satisfy the purposeful-availment standard. *See id.* at 668–70.

Applying these principles to the facts of this case, we conclude that both Dr. Marciano and Gritman have purposefully availed themselves of the privilege of conducting activities in Washington such that Plaintiffs have shown sufficient minimum contacts to satisfy the first due-process requirement.

### i. Dr. Marciano

Dr. Marciano's contacts with Washington are undoubtedly more significant than the South Dakota

doctor's contacts with Idaho in *Wright*. Dr. Marciano knew that Susan was a Washington resident during their extended treatment relationship. Although the record is silent regarding whether Dr. Marciano had other Washington patients, her six-year relationship with Susan is significant. *See Burger King*, 471 U.S. at 482 (noting that a "20-year interdependent relationship" with actors in the forum supported personal jurisdiction). But Dr. Marciano treated Susan in Idaho, not in Washington, and we must look at Dr. Marciano's "contacts with the forum . . . itself" because "a defendant's relationship with a plaintiff or third party [who is a resident of the forum], standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 285–86.

Here, Dr. Marciano's contacts with Susan in Idaho were "intertwined with" her relevant contacts with Washington. *Id.* at 286. At Susan's request, Dr. Marciano sent Susan's prescriptions to Washington pharmacies. This act is regulated under Washington law, with which Dr. Marciano complied. Specifically, state law requires prescriptions sent to Washington to be directed to the patient's pharmacy of choice. *See* Wash. Rev. Code § 69.50.312(1). Washington also imposes state-specific requirements governing both the form of prescription and refill orders and electronic-prescription systems. *See, e.g.*, Wash. Rev. Code § 69.50.312(1), (6). A prescriber who transmits electronic prescriptions in Washington without complying with that state's requirements is subject to civil penalties. *Id.* § 69.50.312(5). Thus, it is fair to conclude that by agreeing to send Susan's prescriptions to Washington, Dr. Marciano sought the privilege of conducting business in that state, which was a benefit that could come only from compliance with Washington law. *See Hanson*, 357 U.S. at 253 ("[I]t is essential in each case that there be some act by which the

defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."); *Burger King*, 471 U.S. at 476 (explaining that where a defendant takes action to "engage[] in significant activities within a State, . . . [it] manifestly has availed [it]self of the privilege of conducting business [in the forum], and because [its] activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require [it] to submit to the burdens of litigation in that forum as well").

Dr. Marciano contends that her contacts with Washington were random, fortuitous, and isolated because she "directed the prescriptions to Susan, not Washington." This argument ignores the realities of the case. While we have focused on where the medical services are provided, rather than where the effects of such treatment were experienced, to avoid subjecting medical professionals to liability for "portable tort[s] . . . deemed to have been committed wherever the consequences foreseeably were felt," we have also noted that "the due process test must be a flexible one that will consider the various circumstances of a particular case." *Wright*, 459 F.2d at 290 & n.7. And our reasoning in *Wright* that the "nature of the average doctor's localized practice" generally does not result in a "systematic or continuing effort on the part of the doctor to provide services which are to be felt [outside the jurisdiction in which the doctor is located]" does not apply here. *Id.* at 290.

Dr. Marciano practiced medicine in an Idaho town immediately adjacent to the Idaho/Washington border. She worked for a medical practice that contracted to provide physician services to Gritman clinics. Gritman's business model includes serving patients throughout a rural region encompassing an area that spans Idaho and Washington.

And Dr. Marciano had been treating Susan since 2016 and always knew that she was a Washington resident.

Dr. Marciano did not have "substantial or continuous and systematic contacts with [Washington]" such that she is subject to general jurisdiction. *Cubbage*, 744 F.2d at 667 (citation modified). But on the record presented, it would be inaccurate to conclude that the nature of her practice is localized only in Idaho for purposes of assessing whether the exercise of jurisdiction over her in Washington "offend[s] traditional notions of fair play and substantial justice," *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted), because she knowingly and intentionally "created continuing obligations to [Washington] residents," *Impossible Foods*, 80 F.4th at 1088 (citation omitted). She did not transmit merely a single prescription to a state that she could not anticipate her patient being in, as in *Wright*, or provide a singular or discrete instance of care, as in *Lewis*. Rather, similar to *Cubbage*, she was Susan's primary care doctor, she engaged in "continuing efforts" to provide prescriptions to Washington pharmacies for Susan's convenience consistent with Washington law, she "ha[s] not shown any efforts . . . to discourage [Washington] patients," and there is no evidence in the record that subjecting Dr. Marciano to jurisdiction in Washington will chill Defendants from treating Washington patients. 744 F.2d at 669–70.

Dr. Marciano also suggests that her conduct cannot constitute purposeful availment because she derived no benefit from sending prescriptions to Washington. We rejected a similar argument in *Cubbage* where the Arizona defendants asserted that they did not profit monetarily from participating in California's Medicare program because their participation afforded them protections provided by

California law. *Id.* at 668. Likewise, by complying with Washington law in transmitting prescriptions to Washington, Dr. Marciano received the benefits of such compliance. And it is reasonable to infer that her willingness to comply with patient requests to send prescriptions to Washington pharmacies made it more likely that she would retain Washington patients, like Susan. In sum, Dr. Marciano did have contacts with Washington, which were not "an isolated occurrence" such that she should not "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### ii.  Gritman

Given our analysis regarding Dr. Marciano, the writing is on the wall for Gritman. Like the hospital in *Cubbage*, Gritman owns clinics that operate adjacent to the Idaho/Washington border. Like the hospital in *Cubbage*, Gritman actively works to serve Washington patients by, among other things, advertising in Washington and participating in Washington's Medicare program. *See* 744 F.2d at 668–69. And like the hospital in *Cubbage*, Gritman does in fact serve Washington patients. *See id.* at 670. Therefore, Gritman's contacts with Washington are at least as significant as the Arizona hospital's contacts with California addressed in *Cubbage*.

Of additional relevance here, Gritman also has chosen to avail itself of Washington law by electronically transmitting prescriptions to Washington on request. *See* Wash. Rev. Code § 69.50.312. Gritman admitted that its doctors must comply with Washington law when transmitting prescriptions to a Washington pharmacy and that it could refuse to transmit prescriptions out of state. Relatedly,

Plaintiffs allege that Susan's husband Mark repeatedly contacted Defendants "to express his concerns" about Susan's prescriptions, and Defendants refused to discuss the issue "because of Washington's law regarding health care information protection." Gritman's intentional compliance with Washington law evidences its intent to gain the "benefits and protections" of that law, which supports a finding of purposeful availment. *See Burger King*, 471 U.S. at 482.

Like Dr. Marciano, Gritman argues that Gritman's acquiescence to a patient's choice for where prescriptions are sent is not purposeful availment of another state's market and laws. That is true in cases like *Wright* where the out-of-state transmission is a singular or isolated occurrence. 459 F.2d at 290. But for the reasons already discussed, we reject this argument where the out-of-state transmission is a "systematic or continuing effort." *Id.*; *see also Herbal Brands*, 72 F.4th at 1093. Gritman also reiterates that its activities are localized only in Idaho because its operations are only in Idaho. That argument is foreclosed by *Cubbage*, in which the medical care occurred solely in Arizona over a short period of time, did not involve a lengthy cross-border relationship, and still gave rise to personal jurisdiction over the hospital in California. *See* 744 F.2d at 667, 672.

### b. Relatedness

The second due-process requirement is that the suit must "'arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017)). "The first half of that standard asks about causation; but the back half . . . contemplates that some relationships will support

jurisdiction without a causal showing." *Id.* at 362. At bottom, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb*, 582 U.S. at 262 (alteration in original) (citation omitted).

Relatedness is easily resolved here. Dr. Marciano's contacts with Washington—transmitting prescriptions to Washington pharmacies as part of her years-long treatment relationship with Susan—are at the heart of this medical-malpractice controversy. Plaintiffs allege that Susan overdosed and died from the medications that Dr. Marciano prescribed. Mark Cox contends that Susan was on "9 or 10 prescriptions" when she died, including oxycodone, Zoloft, gabapentin, and diazepam, and that despite knowing Susan had been falling, was confused, "kept repeating herself," and "appeared dazed," Dr. Marciano increased Susan's prescriptions just two weeks before her death.

Both Dr. Marciano and Gritman argue that Plaintiffs' allegations are based on "allegedly negligent decisions . . . made in Idaho" and therefore do not relate to their contacts with Washington. Defendants are incorrect because a "strict causal relationship" is not required to establish that a claim is "*relate[d] to* the defendant's contacts with the forum." *Ford Motor Co.*, 592 U.S. at 362 (citation modified). Again, *Cubbage* is instructive. We held there that the plaintiff's medical-malpractice claims were related to the Arizona hospital and doctors' advertising in California and participation in California's Medicare program because those activities enabled them "to attract a substantial number of patients from California." 744 F.2d at 670.

While the current record in this case indicates that Dr. Marciano determined which prescriptions to issue in Idaho, she facilitated delivery of the prescriptions, including refills, at Washington pharmacies located closer to Susan's home. She also adjusted the timing of refills from what she prescribed through electronic transmission to the Washington pharmacies. These contacts with Washington were conducted in compliance with Washington law and relate to Plaintiffs' allegations that Dr. Marciano overprescribed opioids and other pharmaceuticals. *Id.* And as previously discussed, it is reasonable to infer that this cross-border facilitation aided Dr. Marciano in attracting and retaining Washington patients.

There is also no basis for distinguishing *Cubbage* as to Gritman. Gritman's relevant Washington contacts were clearly intended to attract Washington patients to seek care at its Idaho clinics. *Id.* It attempts to distinguish *Cubbage* on the basis that Susan was Dr. Marciano's patient before Gritman acquired the clinic where Susan was treated. But it does not cite any authority requiring that a plaintiff allege they saw or acted upon a defendant's advertising to demonstrate that the advertising relates to the lawsuit. Indeed, relevant authority suggests the opposite.

*Ford Motor Co.* involved two negligence and product-liability actions stemming from accidents involving Ford cars. *See* 592 U.S. at 356. The Supreme Court rejected Ford's argument that the suit did not arise from Ford's contacts with the forums because the cars were not sold or manufactured in those states. *See id.* at 361–67. The Court emphasized that a strict causal relationship between the forum contacts and the suit is not required and that Ford's contacts—extensive advertising of its vehicles—was sufficient. *See id.* After observing that Ford's advertising

contacts were related to the suit, in part because they "might turn any resident [of the forum] into a Ford owner," the Court clarified that the plaintiffs had not established a causal connection between the forum contacts and the lawsuits but that causation was not required. *Id.* at 367. Gritman does not grapple with *Ford Motor Co.*[4] And if a product-liability suit relates to a manufacturer's advertising contacts, even when the product was purchased elsewhere, we see no reason why Plaintiffs' claims here would not clear that same hurdle.

### c.  Reasonableness

Having concluded that both Defendants had minimum contacts with Washington and that Plaintiffs' claims are related to those contacts, we next turn to whether Defendants have made a "compelling case" that the exercise of jurisdiction in Washington would be unreasonable because it would not comport with "fair play and substantial justice." *Burger King*, 471 U.S. at 477–78 (citation omitted). On this point, we consider the following factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial

---

[4] Gritman appears to suggest that a defendant's forum contacts must be the but-for cause of the alleged harm. While some of our caselaw can be read to suggest that causation is required to satisfy the second due-process requirement, *see, e.g.*, *Mattell, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003), the Supreme Court made clear in *Ford Motor Co.* that "an exclusively causal test of connection" is incorrect. 592 U.S. at 366.

resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018); *accord Burger King*, 471 U.S. at 477. Neither Defendant has made a sufficiently compelling showing.

### i. Dr. Marciano

As we have explained, Dr. Marciano did purposefully interject herself into Washington affairs, but only in a limited way. Dr. Marciano does not identify any specific burden she would suffer by having to defend this action in Washington, but she does argue more generally that subjecting her to personal jurisdiction in Washington will "erect[] barriers to health care" that "courts have long sought to avoid." In a similar vein, she contends that subjecting her to suit in Washington would render malpractice a "portable tort" and doctors will "be liable anywhere they ever sent a prescription at a patient's request, or even wherever the patient chose to bring a written prescription to fill it and consume the medication."

This is hyperbole; our decision does not reach nearly as far as Dr. Marciano suggests. *Wright* remains good law: discrete prescription transactions do not create the necessary minimum contacts where the doctor does not engage in the type of "systematic or continuing" cross-border activities at issue here. *See* 459 F.2d at 290. To reiterate from our prior analysis, the significant facts underlying our decision here are that (1) the circumstances of Dr. Marciano's practice made it specifically advantageous for her to develop

treatment relationships with residents of the forum, (2) she knowingly developed a lengthy treatment relationship with a forum resident, *and* (3) she repeatedly sent prescriptions for that patient to pharmacies located in that forum in compliance with that forum's law.

Relying on *Wright*, Dr. Marciano suggests that Washington lacks any interest in this dispute because its "dominant interest on behalf of its citizens . . . is not that they should be free from injury by out-of-state doctors, but rather that they should be able to secure adequate medical services to meet their needs wherever they may go." 459 F.2d at 291. Even if this factor tends to favor Dr. Marciano, she has not made a compelling showing. The record suggests that the realities of the region in southeast Washington and northwest Idaho encourage cross-border transaction of services. Defendants intentionally located their services in Idaho, but they did so with the expectation that they would also serve Washington patients.

Dr. Marciano also suggests that subjecting her to personal jurisdiction in Washington for transmitting prescriptions to this jurisdiction would mean patients "unilaterally control personal jurisdiction over their physicians" because Washington law requires doctors "to fill patients' prescriptions at their requested locations." This argument misapprehends Washington law. Washington does not require that out-of-state doctors send prescriptions to the pharmacy of the patient's choice; it requires that prescriptions *sent to Washington pharmacies* be sent to the pharmacy that the patient chooses. *See* Wash. Rev. Code § 69.50.312(1), (2)(d) (exempting "[p]rescriptions issued that are intended for prescription fulfillment and dispensing outside Washington state"). If Defendants want to avoid personal jurisdiction in Washington for claims based on

prescription activity, like those presented here, there is an easy solution: require patients to fill their prescriptions in Idaho. Washington law does not prohibit this choice, and nothing about our decision gives patients unilateral control over where their medical providers may be sued.

Finally, Dr. Marciano implies that subjecting her to personal jurisdiction in Washington is unfair because Washington law is less protective of doctors than Idaho law.[5] But exercise of personal jurisdiction is not the same as choice of law; regardless of where this litigation occurs, Idaho's substantive law may well govern the merits of this case. *See Burger King*, 471 U.S. at 477. Washington applies the Restatement (Second) of Conflict of Laws' "most significant relationship" test to determine the appropriate substantive law governing tort claims. *Erickson v. Pharmacia LLC*, 578 P.3d 306, 316 (Wash. 2025). Application of that test, not the location of the forum, will determine the applicable law governing the merits of this case.

Dr. Marciano does not address the remaining factors, but for the reasons discussed below as to Gritman, none of the relevant factors, either alone or considered in combination, compellingly show that subjecting her to personal jurisdiction in Washington would violate principles of "fair play and substantial justice." *Burger King*, 471 U.S. at 476–77 (citation omitted).

---

[5] No doubt this contributed to Defendants' choice to establish operations only on the Idaho side of the border despite intending to serve patients from both Idaho and Washington.

### ii.  Gritman

Gritman also makes several arguments for why subjecting it to personal jurisdiction in Washington would be unreasonable, only some of which relate to the fairness factors referenced above. First, it suggests that even though Plaintiffs' complaint relies on Washington law, Washington's medical-malpractice statute applies only to in-state providers. If true, this does suggest that Washington's interest in adjudicating this case is lessened, but it does not itself dictate the personal-jurisdiction analysis, which focuses on "the defendant's relationship to the forum." *Bristol-Myers Squibb*, 582 U.S. at 262.

Gritman also suggests that *Swank v. Valley Christian School*, 398 P.3d 1108 (Wash. 2017), establishes that exercising personal jurisdiction over Gritman in Washington is unfair. This is not compelling because *Swank* analyzed Washington's long-arm statute, not whether jurisdiction would comport with fair play and substantial justice under the Due Process Clause. *See* 398 P.3d at 1121–23. And even if *Swank* had addressed due process, we are not bound by a state court's interpretation of federal law. *See Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984) ("[T]he state court's interpretation of federal law does not bind our decision, though it may persuade us to reach a similar result.").

Turning more specifically to the fairness factors, Gritman asserts that it has not injected itself into Washington and that Washington has *no* interest in adjudicating this dispute. For the reasons previously explained, Gritman has "reached out beyond its home" in Idaho by intentionally seeking Washington patients and allowing its medical providers to fill prescriptions in Washington consistent with

Washington law. *Ford Motor Co.*, 592 U.S. at 359 (citation modified). Further, states have a special interest in preventing torts committed within their borders or that cause harm to their residents. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984). While Dr. Marciano is correct that in the medical-malpractice context these interests must be weighed against Washington's interest in its residents having access to medical care, the protection interest still exists. *See Wright*, 459 F.2d at 291.

Gritman further contends that Washington is not the most efficient forum and that Idaho is an adequate alternative. The efficiency factor "depends 'primarily [on] where the witnesses and the evidence are likely to be located.'" *Freestream Aircraft*, 905 F.3d at 609 (alteration in original) (citation omitted). Here, the witnesses and evidence span Washington and Idaho, meaning Washington is one of two forums where resolution may be efficient. Gritman cannot even argue that litigating the dispute in Washington would be inconvenient for its legal counsel, as *all* parties' counsel operate out of offices in Washington. Such a flimsy argument fares especially poorly in a system like ours, where efficiency "is no longer weighed heavily given the modern advances in communication and transportation." *Id.* (citation omitted).

In sum, while no factor overwhelmingly favors Plaintiffs and some factors are either neutral or slightly favor Defendants, taken together, Defendants have not made a compelling showing that requiring them to defend this action in Washington would violate principles of fair play and substantial justice. Accordingly, we conclude that the district court erred in dismissing this case for lack of personal

jurisdiction as to both Dr. Marciano and Gritman. [6] Defendants are subject to personal jurisdiction under § 4.28.185(1)(a), related to the transaction of business in Washington, because that provision is coextensive with the Due Process Clause and exercising personal jurisdiction over Defendants in Washington comports with due process in this case. *See Failla*, 336 P.3d at 1116.

### B. Jurisdictional Discovery

Plaintiffs also appeal the district court's denial of jurisdictional discovery related to whether Gritman is subject to general personal jurisdiction in Washington. "An appellate court will not interfere with the trial court's refusal to grant discovery except upon the clearest showing that the dismissal resulted in actual and substantial prejudice to the litigant." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). Because we conclude that Defendants are subject to specific personal jurisdiction in Washington, Plaintiffs were not prejudiced by the denial of jurisdictional discovery as to general jurisdiction.

### C. Venue

In the alternative to its jurisdictional challenge, Defendants argue that dismissal for improper venue is warranted. We review de novo a motion to dismiss for improper venue under Rule 12(b)(3). *Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1071 (9th Cir. 2001). Although the district court did not reach this issue, we exercise our discretion to address it in the first instance as the question at this stage is purely legal. *See Planned Parenthood of Greater*

---

[6] Plaintiffs conceded at oral argument that another Defendant, Todd Bledsoe, was properly dismissed from this case. Accordingly, we affirm the district court's dismissal as to Bledsoe only.

*Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1110–11 (9th Cir. 2020).

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The "locus of the injury" is sufficient to establish proper venue. *Myers*, 238 F.3d at 1076; *see also* 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3806 (4th ed. 2024) ("In tort cases, courts tend to focus on where the allegedly tortious actions took place and where the [noneconomic] harms were felt."). Because Plaintiffs allege that Susan ingested her prescriptions, overdosed, and died near her home in Albion, Washington, the record establishes that a substantial part of the events giving rise to Plaintiffs' claims occurred in the Eastern District of Washington and that venue therein is proper.

**AFFIRMED IN PART**, **REVERSED IN PART**, and **REMANDED** for further proceedings.[7]

---

[7] Defendants shall bear the costs on appeal. *See* Fed. R. App. P. 39(a)(4).